2014 BNH 014

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 14-10163-JMD
                                                                Chapter 13
Guylaine L. Taal,
        Debtor

*Nancy H. Michels*
*Parnell, Michels & McKay, PLLC*
*Londonderry, NH*
*Attorney for the Debtor*

*Gregory T. Uliasz*
*Feniger & Uliasz, LLP*
*Manchester, NH*
*Attorney for Creditor St. Mary's Bank*

## MEMORANDUM OPINION

### I.  INTRODUCTION

This matter is before the Court on creditor St. Mary's Bank's Motion to Dismiss, for in rem Relief, and for Appropriate Sanctions (Doc. No. 23) (the "Motion").  The Motion requests the following: (1) dismissal of the Debtor's case pursuant to 11 U.S.C.[1] § 1307(c) for a bad faith filing; (2) dismissal of the Debtor's case with prejudice for a period of 180 days pursuant to §§ 109(g) and 349(a); (3) permanent in rem relief with respect to real property pursuant to §§ 105 and 362(d)(4); and (4) monetary sanctions.  The Debtor objects to the Motion.  On May 21, 2014, the Court held an evidentiary hearing on the matter at which one witness testified    the debtor.  After the hearing, the Court took the matter under advisement.

---

[1] Hereinafter the "Bankruptcy Code."

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (G).

## III. FACTS

### A. Setting & Context

Some broader context is necessary to have a fair understanding of this dispute.  The debtor in this case, Guylaine Taal ("Ms. Taal") is married to Baboucar Taal ("Mr. Taal").  Their home is located at 59 Essex Road, Bedford, New Hampshire (the "Property"), which they own jointly.  On December 10, 2004, Ms. Taal borrowed $353,700 from the moving creditor here, St. Mary's Bank (the "Bank").  In return, the Bank received a note from Ms. Taal, secured by a mortgage on the Property.  Mr. Taal, while not a party to the note, is bound by the mortgage.

Mr. Taal is not a stranger to this Court.  He has filed three chapter 13 petitions over the past two-and-a-half years, each of which was dismissed before a plan was confirmed.  Each case was dismissed for a similar reason: his failure to file various documents.  The Court notes that Mr. Taal, despite not filing the necessary documents in any of his three cases, filed many contentious pleadings, a good number of which were directed at the Bank.[2]  Mr. Taal filed all his cases without the assistance of counsel.

Ms. Taal was not a joint debtor in any of those cases.  This is her first bankruptcy case.

---

[2] The particular substance of these pleadings is not relevant to this case.  The Court mentions them only as part of setting out the difference in character between Mr. Taal's past cases and Ms. Taal's present case.

She, in contrast to Mr. Taal, filed her petition with the benefit of legal representation and to date has filed all the required documents. Also, the Court notes that the chapter 13 trustee has not moved to dismiss this case for any reason. Ms. Taal has not yet had the opportunity to confirm her proposed chapter 13 plan (Doc. No. 8) because the Court deferred scheduling a confirmation hearing pending a decision on the Motion.

The Bank filed the Motion claiming that the four bankruptcy filings — Mr. Taal's three and Ms. Taal's one — should be considered as filed by one entity acting in concert as part of a bad-faith scheme to frustrate the Bank's attempts to foreclose on the Property. Each of the filings, the Bank asserts, happened shortly before it was scheduled to conduct a foreclosure sale of the Property. The Bank argues that each of the four filings was devoid of a rehabilitative purpose and that the Taals were purely seeking to frustrate its legitimate state-law rights. To support these arguments, the Bank generally argues that Ms. Taal's schedules, statement of financial affairs, and monthly operating reports are replete with various inconsistencies and inaccuracies.

Ms. Taal denies these allegations and argues that her bankruptcy case is separate from Mr. Taal's prior three and that nothing in the Taals' cases frustrated the Bank's foreclosure sales. First, she argues that the Bank did not start its efforts to foreclose on the Property until after Mr. Taal's first case had been dismissed. Second, she argues that because the Bank never sought relief from the automatic stay in Mr. Taal's cases, it cannot now claim that those cases frustrated its foreclosure attempts. Third, she argues that her schedules are accurate to the best of her knowledge and her good faith is demonstrated by having made substantial payments to the Bank, on account of the note and mortgage, since the inception of Mr. Taal's bankruptcy cases. Ms.

Taal introduced evidence to support these payments, showing $55,029.55 in payments that she made to the Bank between September 2012 and December 2013. Ex. 103. Ms. Taal also introduced evidence that the overall amount she owes to the Bank has been decreased on account of these payments. Ex. 101. The Bank did not dispute these exhibits.

### B.    Filings & Foreclosures

The Court sets out separately the following table to compare the filing and dismissal dates of Mr. and Ms. Taal's bankruptcy cases, and Mr. Taal's extra-bankruptcy attempts to stop the Bank's foreclosure, with the dates on which the Bank took actions to effect the foreclosure sale of the Property.

| Event | Date |
| --- | --- |
| **Mr. Taal's 1st bankruptcy case filed** | **8/15/2012** |
| Mr. Taal's 1st bankruptcy case dismissed | 1/25/2013 |
| First notice of default under note | 2/28/2013 |
| Acceleration Notice | 4/26/2013 |
| **Mr. Taal's 2nd bankruptcy case filed** | **5/13/2013** |
| Mr. Taal's 2nd bankruptcy case dismissed | 7/29/2013 |
| Third notice of default under note | 8/5/2013 |
| First foreclosure cooperation request | 9/17/2013 |
| **Mr. Taal's 3rd Bankruptcy Case Filed** | **9/25/2013** |
| Mr. Taal's 3rd Bankruptcy Case Dismissed[3] | 12/12/2013 |
| Second foreclosure cooperation request | 12/20/2013 |
| Notice of foreclosure sale | 12/30/2014 |

---

[3] Dismissal with a bar to re-filing for 180 days for willful failure to abide by orders of this Court.

| Mr. Taal's attempt to enjoin Bank's foreclosure sale in U.S. District Court | 1/3/2014[4] |
|---|---|
| U.S. District Court for the District of N.H. denies the requested injunction | 1/10/2014 |
| **Ms. Taal's bankruptcy case filed** | **1/30/2014** |
| Date of scheduled foreclosure sale | 1/31/2014 |

To summarize, the Bank did not notice a default on the note until after the dismissal of Mr. Taal's first bankruptcy case. Mr. Taal's second bankruptcy case came some seventy-four days after the first notice of default. His third bankruptcy case was filed eight days after the first cooperation request but over a month after the third notice of default. Ms. Taal's bankruptcy case was filed one day before the scheduled foreclosure sale.

During her testimony, Ms. Taal stated that she was generally aware of each of the events in the table above but that she and Mr. Taal did not have explicit discussions to coordinate strategically on anything. She did state affirmatively that the only reason she filed her bankruptcy case was to stop the Bank's foreclosure.

C. **Inconsistencies & Inaccuracies**

The Bank spent the lion-share of its direct examination of Ms. Taal cataloging inconsistencies and admittedly inaccurate items between and among her bankruptcy schedules, monthly operating reports, and statement of financial affairs. Rather than reviewing every detail of the Bank's examination, the Court will look at the most material elements of Ms. Taal's testimony.

---

[4] The date at the end of this motion indicates it was filed on January 2, <u>2013</u>. However, the filing stamp on the front of the motion shows that this was a typographical error; it was filed in 2014.

5

      (1)    *The Yaram Trust*

Item 10 in Ms. Taal's statement of financial affairs indicates that on July 25, 2011 she and Mr. Taal transferred the Property into the "Yaram Trust." Mr. and Ms. Taal are the trustees and beneficiaries of this trust. Schedule A, as initially filed with her bankruptcy petition, did not discuss the Yaram Trust in relation to the Property. Later, Schedule A was amended to include that title to the Property was held by the trust. Ms. Taal stated that this trust was created for estate planning purposes to protect her and Mr. Taal's children.

      (2)    *Car Registrations*

The Bank examined Ms. Taal about the ownership and motor vehicle registration of her Toyota Tundra. The Bank pointed out that while the certificate of title lists Ms. Taal as the owner, the vehicle is registered to "Sheer Elegance, Inc." Ms. Taal's business. Ex. 41. The Bank also noted that in her deposition, Ms. Taal had stated that Mr. Taal owned the Tundra. Ms. Taal admitted that statement was incorrect, but clarified to say that she is married to Mr. Taal so they see it as both of theirs, even though her name is on the title.

      (3)    *Value of Ms. Taal's Business*

The Bank also inquired into the value of Ms. Taal's business, Sheer Elegance, Inc. On line 13 of Schedule B, Ms. Taal lists the value of her business as $5,000. After being questioned by the Bank, Ms. Taal stated that the business was actually not worth anything because its liabilities exceeded its assets. She also admitted that she had not amended Schedule B to correct this inaccuracy.

      (4)    *Ms. Taal's Income*

Ms. Taal also testified about how she reported her income in her schedules. She

6

admitted that her statement of financial affairs showed that she was earning about $1,200 per week from her ownership interest in Sheer Elegance. She also admitted that the income shown in her Schedule I — $6,716.67 per month — works out to about $1,550 per week. When questioned about the difference the Debtor stated that she simply increased the amount she paid herself from the business.

## IV. DISCUSSION

The Court will first set out the relevant legal standards and then discuss their application to the evidentiary record.

### A. Dismissal for Bad Faith Pursuant to Section 1307(c)

"Section 1307(c) provides that on request by a party-in-interest, after notice and a hearing, the court may dismiss a case under Chapter 13 or convert the case to a Chapter 7 case, whichever is in the best interests of the creditors and the estate, for cause." Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 210-11 (1st Cir. B.A.P. 2005).

While "bad faith" is not an enumerated "cause" under § 1307(c)(1)-(11), "it is well established that lack of good faith (or bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case." Id. at 211 (citations omitted). Under § 1307(c), the moving creditor has the burden of proving a lack of good faith on the part of the debtor. Id.

Bankruptcy courts in the First Circuit apply a totality of the circumstances test to determine whether a debtor has filed a chapter 13 in good faith (or bad faith). Id. Courts typically consider the following factors in making such a determination:

> (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5)

7

> whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief.

Id. at 212 (citing In re Dicey, 312 B.R. 456, 549 (Bankr. D.N.H. 2004)).

Although this Court and others have provided lists of relevant factors, the inquiry is inherently fact sensitive, done on a case-by-case basis, and may involve consideration of other factors or a more general balancing of equities. See Sullivan, 326 B.R. at 212. As this Court has noted before, the requirement of good faith is ambiguous. Dicey, 312 B.R. at 459. Bad faith generally requires something "more than a mistake or inadvertence"; it requires "some form of deception." In re Valentine, 2009 BNH 25. A debtor's mere carelessness or oversight would probably be insufficient on its own to show bad faith. See Hannigan v. White (In re Hannigan), 409 F.3d 480, 483 (1st Cir. 2005).

However, courts have held that a debtor's "reckless disregard for the accuracy of information" contained in his schedules can rise to the level of bad faith. Valentine, 2009 BNH 25; see also Robin Singh Educ. Servs. v. McCarthy (In re McCarthy), 488 B.R. 814, 826 (1st Cir. B.A.P. 2013) ("Even though courts will not construe an ignorant or inadvertent omission as evidence of fraudulent intent, reckless disregard may nonetheless be found based on the 'cumulative effect of a series of innocent mistakes.'") (citations omitted). Moreover, debtors seeking bankruptcy relief may not "play fast and loose with their assets or with the reality of their affairs." Marrama v. Citizens Bank (In re Marrama), 430 F.3d 474, 478 (1st Cir. 2005) (citations omitted). "A bankruptcy court is entitled to insist upon filings and representations made in utmost good faith." Hannigan, 409 F.3d at 483.

### B.   In Rem Relief pursuant to § 362(d)(4)

Section 362(d)(4) provides for in rem relief from the automatic stay for a creditor,

provided certain conditions are met:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay
>
>> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, <u>if the court finds that the filing of the petition was part of a scheme to delay, hinder, or[5] defraud creditors that involved</u> either
>>
>>> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>>>
>>> (B) <u>multiple bankruptcy filings affecting such real property</u>.

11 U.S.C. § 362(d)(4) (emphasis added).[6] Therefore, to grant <u>in</u> <u>rem</u> relief a court must find that: (1) the petition was filed as part of a scheme, (2) the purpose of that scheme was to delay, hinder, or defraud, (3) a secured creditor whose collateral (4) the debtor either transferred without the creditor's consent or was otherwise affected by more than one bankruptcy filing.

---

[5] Prior to 2010 amendments, this "or" was an "and." <u>Behrens v. U.S. Bank, N.A. (In re Behrens)</u>, 501 B.R. 351, 355 n.2 (B.A.P. 8th Cir. 2013)  This amendment altered somewhat the analysis of § 362(d)(4).  Where the Court cites decisions issued before the 2010 amendments took effect, it relies on portions of those decisions unaffected by the amendments.

[6] Section 362(d)(4)(B) goes on to state the effect of recording an order that grants <u>in</u> <u>rem</u> relief:

> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

The Court has not found any binding or in-depth persuasive precedent covering § 362(d)(4) within the First Circuit.  Courts in other circuits have, however, covered this issue thoroughly.  These courts have focused on the term "scheme" when determining whether relief should be granted under § 362(d)(4).  These courts have regarded this term as meaning "an intentional artful plot or plan."  In re Macaulay, No. 11-07382-DD, 2012 WL 2919154 at *3 (Bankr. D.S.C. July 16, 2012) (citing In re Wilke, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010)); Behrens, 501 B.R. at 355.

Courts also apply a four-part test to determine whether in rem relief is appropriate.  This test has its origins in the time before Congress codified in rem relief in § 362(d)(4), when courts would grant such relief pursuant to § 105(a).  See generally, In re Henderson, 395 B.R. 893, 901 n.15 (Bankr. D.S.C. 2008).  "In order to appropriately grant in rem relief, the record must clearly demonstrate an abuse of the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of creditors to recover their collateral."  Id. (quoting In re Price, 304 B.R. 769, 773 (Bankr. N.D. Ohio. 2004)).  Under the four part test, a court should find (1) a strategic filing of bankruptcy petitions to prevent collection; (2) multiple bankruptcy petitions by multiple parties to protect common property; (3) lack of changed circumstances between filings; and (4) the inability to fund a plan.  Henderson at 901; Macaulay at * 3;  see also In re Lord, 325 B.R. 121, 130 (Bankr. S.D.N.Y. 2005) (not explicitly applying this four factor test but examining the record before it for substantially similar circumstances); Rodriguez v. Banco Popular De Puerto Rico (In re Rodriguez), No. PR 14  003, 2014 WL 4244284 at *1 n.2 (B.A.P. 1st Cir. 2014) ("An order granting in rem relief from stay is an appropriate remedy when a debtor serially files bankruptcy petitions solely to invoke the automatic stay.").  The Court finds the test applied

10

in Henderson and the similar discussions in the other cases addressing in rem relief under § 105 instructive in applying § 362(d)(4).

Generally, when a creditor seeks relief under § 362(d), the creditor only has the burden of proof as to the issue of lack of equity in the collateral and the debtor has the burden of proof on all other issues.  § 362(g).  Subsection (d)(4) supplies a more specific rule as to the burden of proof by requiring a court to make an affirmative finding (". . .if the court finds that the filing of the petition was part of a scheme. . ."]).  See In re Muhaimin, 343 B.R. 159, 169 (Bankr. D. Md. 2006) (holding that the court was required to examine the evidence adduced by the moving creditor, rather than grant relief under § 362(d)(4) by default simply because the debtor failed to object and appear at the hearing on stay relief   there is no presumption of a scheme to delay, hinder, or defraud); see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S.Ct. 2065, 2071 (2012) ("It is a commonplace of statutory construction that the specific governs the general.  That is particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions.") (internal quotations omitted) (citing HCSC  Laundry v. United States, 450 U.S. 1, 6 (1981) (per curiam) (a specific provision tends to govern a more general "particularly when the two are interrelated and closely positioned, both in fact being parts of [the same statutory scheme]")).  Here, § 362(d)(4) specifically addresses the problem of multiple abusive bankruptcy petitions.  Behrens 501 B.R. at 355.  Section 362(d) as a whole addresses relief from the automatic stay generally.  Additionally, §§ 362(d) and (g) are positioned closely together.  See HCSC-Laundry at 6.  Accordingly, the creditor has the burden of proof under § 362(d)(4).

### C. Analysis and Application

The Court will conduct a joint analysis of the record under §§ 1307(c) and 362(d)(4). On the facts before it, given the undisputed serial filings, if the Court finds bad faith, it will also likely find that <u>in rem</u> relief is appropriate. The Court will scrutinize the record to determine whether the totality of the circumstances indicates an intentional, bad-faith plan on the part of Mr. and Ms. Taal to prevent the Bank from foreclosing on the Property.

The facts of this case present the Court with a specific type of serial filing — the husband-wife type. When this type of filing rises to the level of bad faith it clearly demonstrates a scheme within the meaning of § 362(d)(4). The court in <u>In re Selinsky</u>, 365 B.R. 260 (Bankr. S.D. Fla. 2007) described the usual plot of this scenario referring to the husband-wife as a "tag-team":

> The scheme operates as follows. Only one member of the "tag-team" files a bankruptcy and uses dilatory tactics to delay its dismissal as long as possible. These tactics include asking the court to extend the time to file schedules and other required documents at the last possible moment or even marginally late.
>
> Once the Court has a moment to review the docket and the past history of the debtor, or by motion of the creditors the case is usually dismissed. Having stopped the foreclosure, the "tag-team" waits for the eve of the next foreclosure, which had to be rescheduled after the dismissal; and then the other member, whose prejudice period has expired in the interim, files. With careful planning this scheme can continue for a very long period of time as the delay from filing, to dismissal, to reset foreclosure proceeding can exceed the normal 180 day prejudice period. Therefore, at any given time one of the members will be eligible to file a bankruptcy and stall the foreclosure.

<u>Selinsky</u>, 365 B.R. at 264. <u>See</u> <u>In re Bailey</u>, 321 B.R. 169 (Bankr. E.D. Pa. 2005) (husband and wife alternatively file ten bankruptcy cases in serial fashion to thwart creditor on the eve of foreclosure); <u>In re Felberman</u>, 196 B.R. 678 (Bankr. S.D.N.Y. 1995) (husband and wife filed four cases on the on the cusp of foreclosure where they failed to make a single mortgage payment and each case was dismissed for failure to comply with the Bankruptcy Code).

Here, the Bank has not met its burden to demonstrate bad faith under §§ 1307(c) or 362(d)(4).  First, the Court finds that while errors, misstatements, and inconsistencies exist in Ms. Taal's schedules, they do not appear to be more than ordinary mistakes that exist in many bankruptcy petitions.  Finding bad faith requires more than simple mistakes.  In re Valentine, 2009 BNH 25.  The simple mistakes in the evidentiary record in this case do not constitute a reckless disregard for the truth or accuracy of bankruptcy schedules.  The mistakes and inconsistencies also do not appear to relate to a greater intentional plot between Mr. and Ms. Taal to prevent the Bank from foreclosing.  Here, the Court has in mind the Yaram Trust, which was settled in July of 2011, well before the Bank sent its first notice of default to the Taals in February of 2013.  This distance in time makes the trust irrelevant to the analysis.

Second, there is the matter of the serial bankruptcies.  The Courts notes at the outset that only Mr. Taal's second and third cases, in addition to Ms. Taal's one case are really relevant here   Mr. Taal's first case was filed before the Bank even sent a notice of default under the note to Ms. Taal.  Of the other three cases, only one was filed on the eve of foreclosure.  This is unlike the typical husband-wife "tag team" cases, where each case is filed immediately preceding a foreclosure.  None of Mr. Taal's petitions were filed when a foreclosure had actually been scheduled, only when the Bank was moving in that direction.  Taal's second case is even further removed from the Bank's foreclosure activity, as it was filed more than seventy days after the Bank's first default notice to the Taals   it is not clear to the Court that the second bankruptcy was necessarily motivated by this demand letter.  The dockets in Mr. Taal's bankruptcy cases in this Court, and the references in his filings and filings by the Bank in those cases, reflect that Mr. Taal's principal motivation in filing his bankruptcy cases was not financial reorganization, but

13

vindication of his problems and disputes with the Bank and its legal counsel. For these reasons the Court finds that the serial filings of the Taals do not demonstrate a scheme sufficient to trigger § 362(d)(4).

Third, Ms. Taal has been consistently making significant payments to the Bank on the note. Indeed, she was making these payments throughout the time Mr. Taal's cases were pending and up until the time she filed. There is no evidence about whether Ms. Taal has been continuing to make payments post-petition. The record indicates that Ms. Taal has made in total over $55,000 in payments since the Taals began filing bankruptcies and that these payments have been reducing the principal balance on the note over the same time. These facts also differentiate this case from the typical husband and wife bad faith serial filing case.

Fourth, Ms. Taal has complied with the requirements of the Bankruptcy Code during this case. She did not file any objection to the Bank's request for a 2004 examination and has not filed a multitude of vexatious, frivolous pleadings, which is in contrast to Mr. Taal's prior cases before this Court. Indeed, Mr. Taal's third case was dismissed by this Court for willful failure to abide by its orders regarding a legitimate request by the Bank for tax return information. This dichotomy is relevant in the bad faith analysis and goes toward Ms. Taal's demonstration of a serious bankruptcy purpose, rather than using this Court as a forum for some other, less appropriate goal. See In re Lord, 325 B.R. 121, 130 (Bankr. S.D.N.Y. 2005) (finding the debtor's bad faith was "underscored by her apparently thoughtless submission of irrelevant and baseless pleadings that were copied or compiled from other oppositions, leveling serious accusations and legal arguments that are inapplicable and entirely false.").

For all these reasons, the Court finds that under the totality of the circumstances, Ms.

Taal's petition was not filed in bad faith.  For the same reasons, her filing does not appear to be related to Mr. Taal's filings as part of any intentional scheme or plan to frustrate the Bank's exercise of its rights under the note and mortgage on the Property.  Therefore, the serial filings of Mr. and Ms. Taal do not appear to be part of a scheme meriting in rem relief.  Because the Court does not find bad faith or the requisites for in rem relief, the balance of the Motion shall be denied.

### V.  CONCLUSION

The Motion shall be denied for the foregoing reasons.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate order shall issue disposing of the Motion and setting a hearing date on confirmation of Ms. Taal's proposed chapter 13 plan.

ENTERED at Manchester, New Hampshire.

Date:   October 8, 2014                                     /s/ J. Michael Deasy
                                                                            J. Michael Deasy
                                                                            Bankruptcy Judge