**2015 BNH 010**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 14-10163-JMD
                                                               Chapter 13
Guylaine L. Taal,
                    Debtor

*Nancy H. Michels*
*Parnell, Michels & McKay, PLLC*
*Londonderry, NH*
*Attorney for the Debtor*


*Gregory T. Uliasz*
*Feniger & Uliasz, LLP*
*Manchester, NH*
*Attorney for Creditor St. Mary's Bank*


## MEMORANDUM OPINION

## I.  INTRODUCTION

The Court has before it the Debtor's objection to proof of claim no. 11 (Doc. No. 56) and her objection to a notice of post-petition mortgage fees, expenses, and charges relating to claim no. 11 (Doc. No. 58) (collectively the "Objections").  St. Mary's Bank is the creditor that filed both claim no. 11 ("POC 11") and the post-petition fee notice (the "Post-Petition Fee Notice").[1] In this opinion, the Court addresses the portion of the Objections that relates to attorney's fees and expenses, which St. Mary's Bank seeks to recover pursuant to a note and mortgage.

---

[1]  The original Notice of Post-Petition Mortgage Fees, Expenses, and Charges Relating to Proof of Claim No. 11 was dated June 23, 2014.  This notice was amended on April 2, 2015.  The amendment has no effect on the fees and expenses at issue in this memorandum opinion.

## II.  JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (G).

## III.  FACTS

The background of this case is complex, involving the details of a contentious relationship between the Debtor (the "Debtor"), her non-debtor spouse ("Mr. Taal"), and St. Mary's Bank (the "Bank").  The Bank is the mortgagee and note-holder of the first mortgage on the Debtor's principal residence (the "Note," "Mortgage," and "Property" respectively).  Mr. Taal is not obligated on the note, but did sign the mortgage and is a co-owner of the Property.  Mr. Taal has filed three bankruptcy cases in this Court in the past several years, all of which were dismissed without substantial progress toward confirming a chapter 13 plan.  In contrast to Mr. Taal's conduct of his bankruptcy cases, the Debtor obtained counsel prior to filing, has prosecuted this case in a timely manner, and has made significant progress towards confirming a chapter 13 plan.  Aside from this brief background, the Court will not recount the details of the relationship between the parties.  The Court set out the full background of this case and the parties' relationship in a previous opinion.  See In re Taal, 520 B.R. 370 (Bankr. D.N.H. 2014).

Continuing disputes between the Debtor and the Bank have delayed confirmation of a chapter 13 plan in this case.  First, the Bank moved to dismiss this case as a bad faith filing and

asked for in rem relief pursuant to 11 U.S.C. § 362(d)(4).[2]  The Court resolved that motion in favor of the Debtor.  See Taal, 520 B.R. at 380.  Next, the Debtor filed the Objections.  The Court held a number of hearings on the Objections, which were filed in November 2014.  The first was on January 16, 2015.  At this hearing, the Court addressed the two main issues raised in the Objections: (1) whether the Bank had misapplied pre-petition mortgage payments; and (2) the amount of attorney's fees and expenses included in POC 11 and in the Post-Petition Fee Notice.  After the hearing, the Court sustained the Objections in part, ruling that the Bank had misapplied certain pre-petition mortgage payments and directed the Bank to correct its accounting.  See January 22, 2015 Order (Doc. No. 88).  The Court also ordered the Bank to provide the Debtor with copies of the invoices supporting its attorney fee and expense claim, which the Court directed the Debtor to respond to.  See January 21, 2015 Order (Doc. No. 85).

After the Debtor filed a response to the Bank's fee invoices (Doc. No. 104) and a response to the Bank's re-accounting of pre-petition mortgage payments (Doc. No. 106), the Court held another hearing on April 3, 2015.  At the hearing, the Court determined that the fee invoices that the Bank had provided to the Debtor were insufficiently detailed for the Court to make a ruling on whether the fees were allowable.  The Court then ordered the Bank to submit complete copies of its fee invoices and set a new deadline for the Debtor to respond.  Once the parties made their submissions, the Court took the dispute concerning the fee and expense invoices under advisement.[3]

---

[2]  Hereinafter, all references to "§," "section," "Code," and "Bankruptcy Code" are references to title 11 of the United State Code, unless otherwise indicated.

[3]  The balance of the Objections—those issues relating to accounting of pre-petition mortgage payments—have been further contested in additional pleadings.  See Doc. Nos. 124

## IV.  DISCUSSION

The current dispute between the Debtor and Bank focuses on attorney's fees and other expenses that the Bank incurred both pre-petition and post-petition, which the Bank asserts are recoverable under the Note and Mortgage.  The Debtor has proposed a chapter 13 plan that would cure any defaults under the Note and Mortgage and maintain regular payments to the Bank during the life of the plan.  See Chapter 13 Plan Dated January 30, 2014, ¶ 5 (Doc. No. 8); § 1322(b)(5).

Legal Standard Applicable to Fees and Expenses

When a chapter 13 plan proposes to cure a default under § 1322(b)(5) the amount necessary to cure the default is determined under state law.  Specifically, § 1322(e) overrides the default rules pertaining to secured claims set down in § 506(b), such as a secured creditor only being entitled to attorney's fees if the value of its collateral exceeds the value of its secured claim.   Section 1322(e) provides:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

Here, the Bank is claiming attorney's fees and expenses in POC 11 and in the Post-Petition Fee Notice.  Pursuant to § 1322(e), the Court will determine the Cure Amount of the attorney's fees and expenses under state law and the provisions of the Note and Mortgage.

Three different parts of the Note and Mortgage govern the Bank's ability to recover

---

and 126.  The Court issued an order on June 17, 2015 (Doc. No. 132) that resolved some of the remaining disputes with regard to pre-petition, mortgage payment accounting and a related sanctions motion.  The Court will resolve any remaining issues raised in the Objections by separate order.

4

attorney's fees and other costs from the Debtor.  Paragraph 7 of the Note, entitled "Borrower's

Failure to Pay as Required," provides in section (E):

> **Payment of the Note Holder's Costs and Expenses**
> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Section 9 of the Mortgage provides:

> **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**
> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy . . . ) . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property . . . .  Lender's actions can include, but are not limited to: . . . (b) appearing in court; and (c) paying reasonable attorney's fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrowing requesting payment.

Finally, § 14 of the Mortgage provides:

> **Loan Charges.**
> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Under the mortgage, "Applicable Law" is defined in sub-section (H) of the definitions section

(page 2 of the Mortgage) to mean "all controlling applicable federal, state and local statutes,

5

regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."

Under New Hampshire law, a request for attorney's fees "must be grounded upon statutory authorization, a court rule, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." In the Matter of Hampers & Hampers, 154 N.H. 275, 289 (2006) (quotation omitted).  An agreement between the parties that shifts attorney's fees is interpreted by "giving the language used by the parties its reasonable meaning." Turner v. Shared Towers VA, LLC, 167 N.H. 196, 207 (2014).  Here, the Note and Mortgage plainly provide the Bank with the ability to recover attorney's fees and other costs from the Debtor under certain circumstances.  The parties agree that the Bank may recover attorney's fees and other expenses as long as they are "reasonable or appropriate to protect [the Bank's] interest in the Property and rights under" the Note and Mortgage.  See Mortgage § 9.  The parties disagree, however, as to whether specific tasks the Bank's attorney performed fall within the definition of fees chargeable to the Debtor.  The parties also disagree as to whether the Bank's attorney expended a reasonable amount of time on specific tasks.  Finally, the parties disagree about whether certain expenses related to the foreclosure process are reasonable.

In determining whether the attorney's fees included in the Cure Amount are reasonable, the Court finds the federal lodestar approach to fees persuasive.[4]  Under this approach, the Court

---

[4] Although § 1322(e) directs the Court to determine the Cure Amount under state law, the parties agreed that the federal lodestar approach to determining whether attorney's fees are reasonable was persuasive, given the language of the Note and Mortgage.  The Court concludes that New Hampshire law allows for this approach, where no New Hampshire statute is controlling.  See Town of Barrington v. Townsend, 164 N.H. 241, 249 (2012) (in determining

"multipl[ies] the number of hours productively spent by a reasonable hourly rate."  Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 69 (1st Cir.2012) (quoting Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008)).  Here, the parties are not in dispute over the hourly rate applied—$250 per hour for attorney time and $85 for paralegal time—and the Court finds that these hourly rates are reasonable and commensurate with the usual rates charged in the community for the type of work involved.

With the hourly rates determined, the Court will now focus on the number of hours productively spent.  In making this assessment, the Court should subtract time expended "on unnecessary, duplicative, or overworked tasks."  Sullivan 674 F.3d at 69.  This approach is flexible; "[t]he court need not follow a rigid prescription when reducing fees; it may either eliminate specific hours or reduce the overall fee award to a reasonable amount."  In re Little, 484 B.R. 506, 511 (B.A.P. 1st Cir. 2013).  If a court reduces fees substantially, "then it must provide a sufficiently detailed explanation . . . to establish the basis for the reduction."  In re Graham, 2013 BNH 002, 6, No. 12-11152-JMD, 2013 WL 587305 at *3 (Bankr. D.N.H. Feb. 14, 2013).

The majority of the parties' dispute focuses on whether certain time the Bank's attorney spent was unnecessary, duplicative, or overworked.  The Bank provided a detailed fee report that includes attorney billing sheets and an overall summary that breaks the time down into individual categories and summarizes the work on a general level.  See Doc. No. 123 (the "Fee

---

whether attorney's fees were recoverable under New Hampshire statute, federal lodestar approach was not controlling).  In general, when assessing attorney's fee awards, the New Hampshire Supreme Court looks to the New Hampshire Rules of Professional Conduct, which includes factors that jibe with the lodestar method.  See Funtown USA, Inc. v. Conway, 129 N.H. 352, 356 (1987) (quoting Couture v. Mammoth Groceries, Inc., 117 N.H. 294, 296 (1977)).

Report").  For the sake of convenience, the Court has broken down the following analysis into categories that mirror those in the Fee Report.  The Court will go through each category, summarizing the positions of the parties, and then determining the allowable amount of fees.

Fee Categories

The following attorney's fees are included in POC 11, meaning that any reduction in these fees will affect the total amount of the Bank's pre-petition claim.

**(1)      Appellate Proceedings Arising from Mr. Taal's First Bankruptcy Case**

In this category, the Bank seeks to recover for work its attorney did to analyze issues relating to the automatic stay and Mr. Taal's appeal of his first bankruptcy case.  The Debtor objects to these fees as not being related to the Property.

Mr. Taal's first bankruptcy case was filed on August 15, 2012.[5]  It was dismissed on January 25, 2013.  Mr. Taal filed several motions to alter or amend the dismissal order—which were denied—and ultimately appealed the dismissal order to the U.S. District Court for the District of New Hampshire.  This Court denied a motion to stay pending appeal.

As this was Mr. Taal's first bankruptcy filing, an automatic stay arose pursuant to § 362(a) when he filed the petition, staying any action the Bank might have taken against Mr. Taal's interest in the Property.  The automatic stay terminated when the Court dismissed the case, but Mr. Taal's several attempts to overturn the dismissal order arguably confused the date upon which the stay ceased to exist.  Here, the Court finds that the time the Bank's attorney spent allowable under the Note and Mortgage, given the potential impact of the automatic stay

---

[5] To the extent necessary to discuss Mr. Taal's prior bankruptcy filings, the Court takes judicial notice of the docket in each case.  Mr. Taal's first bankruptcy case was assigned case no. 12-12575-BAH.

on the exercise of the Bank's rights under the Mortgage.

Total time allowed: 1.2 hours of attorney time and 1.6 hours of paralegal time.

**(2)    First Foreclosure Attempt**[6]

Here, the Bank seeks to recover fees for services related to its first attempt to foreclose on the Property.  This first attempt only proceeded to the issuing of an acceleration notice on the Note before Mr. Taal filed his second bankruptcy petition.  See In re Taal, 520 B.R. at 373.  The Bank's attorney completed tasks such as reviewing the Note and Mortgage, dealing with title issues—which were complicated because Mr. Taal and the Debtor had deeded the Property to a trust without the Bank's knowledge, see id. at 374—and drafting and sending notices of default and an acceleration notice.  In total, the Bank's spent 16.4 hours of attorney time and 5.6 hours of paralegal time on these matters.  The Debtor argues that the time spent here was excessive for a power of sale foreclosure proceeding in New Hampshire.

Overall, the Court agrees with the Debtor and finds the time spent on the foreclosure excessive.  In total, the Bank's professionals spent over 20 hours only getting to the point where they were sending the first notices of default and acceleration, in what was essentially an ordinary power of sale foreclosure.  To the extent the Bank's review of the Property's chain of title was complicated by the Debtor and Mr. Taal's actions, the Court finds the fees reasonable.  Accordingly, the Court shall disallow 50% of the fees relating to the foreclosure work but allow all the time for work on the examination of the chain of title.  See Fee Report at §§ B and C.

Time allowed for foreclosure related work: 12.8 hours of attorney time * 50% + 3.9 hours

---

[6] The Court has combined the next two sections of the Fee Report, entitled "Default on Loan and Initiation of Foreclosure Proceedings First Time" and "Confirmation of Title" as both are integrally related to the Bank's first foreclosure attempt.

of paralegal time * 50% = 6.4 hours of attorney time + 1.95 hours of paralegal time.

Time allowed for title work: 3.6 hours of attorney time and 1.7 hours of paralegal time.

Total time allowed: 10 hours of attorney time and 3.65 hours of paralegal time.

### (3)    Mr. Taal's Second Bankruptcy Case and Related Appellate Proceedings

The Bank seeks to recover attorney's fees relating to Mr. Taal's second bankruptcy filing.  The Bank's attorney apparently performed work on a motion to limit the stay and Mr. Taal's attempt to avoid a judicial attachment that the Bank held on the Property. The Bank's attorney also did work to stop Mr. Taal from extending the automatic stay.  In total, this work adds up to 4 hours of attorney time.  The Debtor objects to these fees, arguing that they are either supported by vague time entries or are unrelated to the Property.

The Court will disallow these fees because the services relating to the motion to limit the stay were unnecessary and because Mr. Taal's motion to avoid lien was not related to the Bank's rights under either the Note or Mortgage.  The work relating to the motion to limit the stay was unnecessary because the automatic stay expired by operation of law, without the Bank's intervention, and Mr. Taal did not seek to reinstate it.[7]  Further, the Bank never actually filed any motions relating to the automatic stay.

Mr. Taal's Motion to avoid lien pursuant to § 522(f) (Doc. No. 56 in case no. 13-11253-BAH) was not an attempt to avoid the Mortgage, but an attempt to avoid a judicial attachment on the Property for a debt unrelated to the Note.  Because the debt at issue was wholly unrelated to the Note or Mortgage and the attachment did not affect the validity or priority of the Mortgage,

---

[7] The automatic stay expired thirty days into the case pursuant to § 362(c)(3) because this was Mr. Taal's second bankruptcy case pending within the same year after a dismissed case.

any fees or costs the Bank incurred defending the lien avoidance motion are not recoverable here.

Total time allowed: None.

**(4)     Second Foreclosure Attempt**

Here the Bank seeks to collect attorney's fees for the second foreclosure attempt it initiated, after the Court dismissed Mr. Taal's second bankruptcy case.  According to the Bank, its professionals spent 8.8 hours of attorney time and 2.2 hours of paralegal time updating prior work.  The Debtor argues that this time is excessive, and the Court agrees.  Given that the Court has allowed fees for nearly the same amount of work for the first foreclosure, work which the bank's attorney completed just a few months earlier, taking an additional 10 hours to update that work is unreasonable.  The Court also notes that this foreclosure was interrupted, at an early stage, by the filing of Mr. Taal's third bankruptcy case, before the Bank even had an opportunity to notice the foreclosure sale.  See In re Taal, 520 B.R. at 373. Accordingly, the Court shall only allow 25% of the amount requested.

Total time allowed: 8.8 * 25% + 2.2 * 25% = 2.2 hours of attorney time and .55 hours of paralegal time.

**(5)     Banking Commission Complaint[8]**

The Bank seeks to recover fees for Mr. Taal's two complaints filed with the New Hampshire Banking Commission.  The Debtor argues that these complaints were unrelated to the

---

[8] The Court has combined sections F and G of the Fee Report.  The reference to the "New Hampshire Banking Commission" should undoubtedly be to the "New Hampshire Banking Department" or the "New Hampshire Banking Commissioner."  The Court has utilized the Bank's nomenclature in this opinion to avoid any confusion.

Note or Mortgage.  There is nothing in the record to indicate how Mr. Taal's complaints to the Banking Commission affected the Bank's rights under the Note or Mortgage.  Accordingly, the Court shall disallow the 8.1 hours of attorney time the Bank claims.

Total time allowed: None.

**(6)     Mr. Taal's Third Bankruptcy Filing**

The Bank asserts its right to collect attorney's fees relating to Mr. Taal's third bankruptcy, including analyzing the implications of the automatic stay.  As this was Mr. Taal's third bankruptcy filing with two prior cases dismissed during that year, the automatic stay did not come into effect upon the filing of the petition.  See § 362(c)(4).  The Bank filed a motion to confirm the stay was not in effect, and Mr. Taal moved to reimpose the stay, to which the Bank objected.  See Doc. Nos. 33, 34, and 41 in case no. 13-12346-JMD.  For this work, the Bank seeks fees for 3.9 hours of attorney time under the Note and Mortgage.  The Debtor objects to this time as unrelated to the Property.  The Court finds these attorney's fees allowable.  Given Mr. Taal's multiple filings and motion to impose the automatic stay, which could have affected the Bank's rights under the Mortgage, the Court finds the time and effort expended by the Bank to be recoverable and reasonable.

Total time allowed: 3.9 hours of attorney time.

**(7)     Various State Court matters**[9]

Here, the Bank argues that it is entitled to recover time spent litigating with Mr. Taal in state court.  The Debtor identifies the lawsuit in question as one relating to a separate loan between the Bank and Mr. Taal, which the Bank does not dispute.  The Court shall disallow

_____

[9] The Court has combined sections I and J of the Fee Report.

these fees because they do not appear to relate to the Bank enforcing or protecting its rights under the Note and Mortgage. In total, the Bank has requested 9.6 hours of attorney time and 1.6 hours of paralegal time in this category.

Total time allowed: None.

**(8)     Third Foreclosure Attempt**

Here the Bank seeks fees it incurred in relation to its third attempt to foreclose on the Property. The Bank seeks to recover 32.6 hours of attorney time and 13.7 hours of paralegal time for these efforts. According to the Bank, this time was spent updating its earlier work, preparing sale notices, working with the auctioneer, setting a budget, planning the day of the sale, organizing security for the sale, canceling the sale (after the Debtor filed her bankruptcy petition), and meeting with potential buyers at the canceled sale. The Debtor objects to the amount of time spent, arguing that it is nearly three times the amount that would be customarily charged for a power of sale foreclosure.

Again, the Court finds these fees to be excessive. The Court understands the difficult relationship between the Bank, the Debtor, and Mr. Taal. This relationship was strained to the point that a state court issued a restraining order. Undoubtedly, this relationship complicated the foreclosure process, and the Court finds it reasonable that the fees would be higher than normal under these circumstances. But, expending over 40 hours of combined attorney-paralegal time is excessive, and the Bank has not provided a sufficient explanation why so much time was necessary or appropriate to protect its interest in the Property. The Court has already allowed approximately 15 hours of time for the first and second foreclosure attempts. The work to update those prior efforts to be used for round three should have been straightforward. The

13

Court will reduce the fees for the third foreclosure attempt by 50%. The Court finds that approximately 20 hours for a difficult foreclosure is reasonable, considering that a good portion of the work was to update prior title reports and letters previously drafted.

Total time allowed: 32.6 * 50% + 13.7 * 50% = 16.25 hours of attorney time and 6.85 hours of paralegal time.

### (9)  Injunction to Stop Foreclosure

In this category, the Bank seeks compensation for time and effort its attorney expended halting Mr. Taal's effort to enjoin its third foreclosure attempt in the U.S. District Court for the District of New Hampshire. Mr. Taal appealed the denial of his request for an injunction to the U.S. Court of Appeals for the First Circuit and the United States Supreme Court. The Debtor objects to these fees as unrelated to the Property. The Court finds these fees to be reasonable. In total, the Bank expended 4.7 hours of attorney time defending against Mr. Taal's efforts in this area. These efforts were related to the Bank enforcing its rights to enforce the Mortgage via foreclosure.

Total time allowed: 4.7 hours of attorney time.

### (10)  Initial Review of the Debtor's Bankruptcy Petition[10]

The Bank argues that it is entitled to recover fees related to work its attorney did upon the Debtor's filing of her chapter 13 petition. This work includes reviewing the petition, reviewing proofs of claims filed by other creditors, conferencing with the Bank's representatives, and legal research regarding the bankruptcy's impact on the foreclosure sale and issues relating to the

---

[10] The Court has combined sections M and N of the Fee report. From this point forward, the attorney time relates to the Post-Petition Fee Notice, not POC 11.

automatic stay.  In total, the Bank is seeking 39.2 hours of attorney time and 9.7 hours of paralegal time for this work.  The Debtor argues again that these fees are plainly excessive, that reviewing other creditors' claims does not relate to the Property, and that some of the issues marked as related to the initial filing in the detailed time sheets in fact relate to the Bank's efforts later in the case.

The Court finds that while this time is compensable under the Note and Mortgage—it all appears to relate to protecting the Bank's interest in the Property—the amount spent on an initial review of the petition, proofs of claim, and automatic stay issues is excessive under the circumstances present.  The Bank's attorney should have been familiar with the specific facts of this case given Mr. Taal's three prior filings and the various state court matters.  As far as initial review goes, the legal and factual issues involved are very similar.

The Court will allow additional time as this bankruptcy filing was Mrs. Taal's and not Mr. Taal's.  This fact cuts both ways, however.  One key difference between the bankruptcies of Mr. Taal and the Debtor is the Debtor's representation by legal counsel.  Debtor's counsel completed and filed the petition, which inevitably made it easier for the Bank to review the petition and have confidence in its content.  Additionally, the Fee Report shows that the Bank's attorney was in communication with Debtor's counsel after the filing of the petition, something that also likely facilitated the Bank's initial review.  The Court does not find that the difficult relationship between the Bank and the Taals should have been a complicating factor in an initial review of the petition.  At base, however, the Bank is requesting more than 40 hours of time for the initial review of a routine chapter 13 petition where the Bank, its staff, attorney, and attorney support staff were all throughly familiar with the facts involved.  The amount of time spent is

15

unreasonable.  Accordingly, the Court will allow 33% of the time requested.

Total time allowed: 39.2 * 33% + 9.7 * 33% = 13 hours of attorney time and 3.2 hours of paralegal time.

### (11)    2004 Exam

Here, the Bank seeks compensation for time its attorney spent preparing for a 2004 examination of the Debtor.  The Bank avers this required detailed preparation and review of all the documents related to the case.  The Courts finds the time the bank spent on this matter to be reasonable given the level of detail and amount of preparation required to conduct a 2004 examination, especially in light of the factually complex background in this case.  The Court shall further address the Debtor's objection to these fees in a later section.

Total time allowed: 10.5 hours of attorney time and 6.2 hours of paralegal time.

### (12)    341 Meeting

The Bank also asks for compensation for the time its attorneys spent at the 341 meeting of creditors in this case.  The Bank sent two attorneys, given its contentious relationship with the Debtor.  In total Bank's attorneys worked 5 hours on matters related to the 341 meeting, including attendance and preparation.  The Court finds this amount of time reasonable, and having two attorneys attend the meeting was reasonable under the circumstances.  The Court will further address the Debtor's objection to these fees in a later section.

Total time allowed: 5 hours of attorney time.

### (13)    Filing Proof of Claim and Objection to Plan

The Bank is seeking reimbursement for attorney's fees it incurred filing its proof of claim in this case and its objection to the chapter 13 plan.  In total, the Bank claims a right to

16

reimbursement for 22.8 hours of attorney time and 9.4 hours of paralegal time for these matters. The Debtor argues that some of this time should be disallowed either because POC 11 contained errors when it was initially filed or because the confirmation objection lacked merit. The Court finds this time to be allowable under the Note and Mortgage. There is no indication that the accounting errors in the proof of claim were introduced or caused by the Bank's attorney. The Court also notes that the confirmation hearing has not yet been concluded, so the Court cannot rule that the Bank's objection to confirmation lacks merit. Accordingly, the Court finds that the Debtor's objections to these fees unsustainable.

Total time allowed: 22.8 hours of attorney time and 9.4 hours of paralegal time.

**(14)   Motion to Dismiss and for In Rem Relief**

Here, the Bank seeks compensation for the Motion to Dismiss and for In Rem Relief that it brought against the Debtor seeking to have the case dismissed. In total the Bank spent 111.3 hours of attorney time and 41.8 hours of paralegal time on this matter. The Debtor's primary objection to these fees relies on a section of the Mortgage that the Court has not yet discussed.

Section 25 of the Mortgage[11] provides for fee-shifting in favor of the Debtor, under

---

[11] RSA 361-C:2 mirrors § 25 of the Mortgage:

If a retail installment contract or evidence of indebtedness provides for attorney's fees to be awarded to the retail seller, lender or creditor in any action, suit or proceeding against the retail buyer, borrower or debtor involving the sale, loan or extension of credit, such contract or evidence of indebtedness shall also provide that:
I. Reasonable attorney's fees shall be awarded to the buyer, borrower or debtor if he prevails in

(a) Any action, suit or proceeding brought by the retail seller, lender or creditor; or

(b) An action brought by the buyer, borrower or debtor; and

17

certain conditions:

> **Attorneys' Fees.**
> Pursuant to New Hampshire Revised Statutes Annotated Section 361-C:2, in the event that Borrower shall prevail in (a) any action suit or proceeding, brought by Lender, or (b) any action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower.  Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

The Debtor successfully prevailed against the Bank's Motion to Dismiss and for In Rem Relief.

See In re Taal, 520 B.R. at 380.  Based on these facts, the Debtor asserts, under § 25 of the

Mortgage, that (1) the Bank should not be allowed to collect any of the fees it requests for these

matters and (2) that the Bank should have to pay the Debtor's attorney's fees to defend the

Motion to Dismiss.

      The Bank's sole argument against applying § 25 of the Mortgage in this fashion rests on

a faulty legal premise.  The Bank argues that 11 U.S.C. § 506(b) preempts RSA 361-C:2, citing

this Court's decision In re Center, 282 B.R. 561 (Bankr. D.N.H. 2002).[12]  In Center, the Court

held that "section 506(b) of the Bankruptcy Code preempts state law with respect to the

enforceability of an attorneys' fee provision contained in an agreement under which a creditor's

claim arises."  282 B.R. at 568.  This holding and Center in general are irrelevant to this case

---

    II. If a buyer, borrower or debtor successfully asserts a partial defense or set-off, recoupment or counterclaim to an action brought by the retail seller, lender or creditor, the court may withhold from the retail seller, lender or creditor the entire amount or such portion of the attorney fees as the court considers equitable.

    [12] At page 13, paragraph 19 of the Bank's Response to the Objections (Doc. No. 82), the Bank refers to § 506**(c)**.  The Court assumes this was a typographical error, as Center discusses § 506(b), and § 506(c) relates to the trustee's ability to recover costs from a secured creditor, which is inapposite to the matter at hand.

because the Debtor's chapter 13 plan proposes to cure and maintain the Debtor's obligation to the Bank under the Note and Mortgage pursuant to § 1322(b)(5) .  In such plans,  § 1322(e) directs the Court to look to state law to determine the Cure Amount, "notwithstanding  § 506(b)."  See Gagne v. Countrywide Home Loans, Inc. (In re Gagne), 378 B.R. 439, 443 (Bankr. D.N.H. 2007) (" [Section] 506(b) has no applicability in the cure situation in which a debtor is merely keeping the original contract in place and bringing it up to date.") (citing Collier On Bankruptcy ¶ 1322.18 (Alan N. Resnick & Henry J. Sommer eds. 15th ed. 2015).

The Court finds that § 25 of the Mortgage and the provisions of RSA 361-C:2 are enforceable in the bankruptcy context.  The language of § 25 refers to "any action suit or proceeding" brought by the Bank.  Section 9 of the Mortgage uses the term "proceeding" to refer to a "proceeding in bankruptcy."  The Court sees no reason that these terms should not be afforded consistent meaning throughout the Mortgage, especially where both sections deal with attorney's fees.  Second, the plain and ordinary meaning of the terms "action," "suit," or "proceeding" encompasses contested matters in a bankruptcy proceeding.

This approach has been followed by courts in other states dealing with similar contracts and statutes.  In In re Giusto, the bankruptcy court awarded attorney's fees to a debtor who successfully defended against a mortgagee's motion for relief from stay.  In re Giusto, 532 B.R. 760 (Bankr. N.D. Cal. 2015).  The court based the fee award on the language on California's version of RSA 361-C:2, Cal. Civ. Code § 1717 ("CCC § 1717").  After noting that CCC § 1717 allowed reciprocal attorney's fees for "an action on a contract," the court conducted an analysis of California law and determined that a stay relief motion in a bankruptcy case would be "an

action on a contract."  After making this determination, the court awarded attorney's fees to the

debtor.  See also In re Johnson 460 B.R. 234, 248 (Bankr. E.D. Ark. 2011) (in a contested matter

awarding attorney's fees to the debtor based on a state law fee shifting statute that applied to

various types of collection actions) rev'd on other grounds by J.P. Morgan Chase Bank, N.A. v.

Johnson, 470 B.R. 829 (E.D. Ark. 2012).  Given the language of the Mortgage, RSA 361-C:2,

and the example in Giusto the Court will accept that the fee shifting provisions of § 25 of the

Mortgage apply to the Motion to Dismiss.

　　　　With regard to the Bank's claimed attorney's fees for the Motion to Dismiss and for In

Rem Relief, the Court finds it equitable to disallow the Bank's fees.  Both § 25 of the Mortgage

and RSA 361-C:2(II) provide the Court with discretion to disallow the Bank's fees when the

Debtor prevails in an action brought by the Bank, such as the Motion to Dismiss.  See Gaucher

v. Cold Springs RV Corp., 142 N.H. 299 (1997) (holding that trial court had discretion under

RSA 361-C:2(II) to withhold creditor's attorney's fees when debtor was successful in bringing

affirmative defense).  The Motion to Dismiss was an "action" the Bank brought against the

Debtor.  The Court finds it equitable to disallow the Bank's fees, which are significant and

would potentially impact the Debtor's ability to successfully reorganize under chapter 13.  In its

Motion to Dismiss, the Bank asserted that this case had been filed in bad faith and should be

viewed merely as an extension of Mr. Taal's legal crusade against the Bank.  The Court found

the Bank's claims to be unsupported and that the Debtor had conducted this case in good faith,

making all the required payments to the Bank post-petition and attempting to comply with all the

requirements imposed upon her under the Bankruptcy Code.  See Taal 520 B.R. at 379.  Given

the language in the Mortgage, and under all the circumstances, the Court finds it inequitable

under the terms of the Note, Mortgage, and applicable state law that the Debtor would have to finance litigation against herself when she ultimately prevailed.

Under the language of § 25 of the Mortgage and RSA 361-C:2, awarding the Debtor attorney's fees is mandatory if the Debtor prevails ("in the event that Borrower shall prevail in (a) any action suit or proceeding, brought by Lender, or (b) any action brought by Borrower, reasonable attorneys' fees **shall** be awarded to Borrower") (emphasis added).  Here, it is undisputed that the Debtor prevailed on the Motion to Dismiss, and the Court must award her attorney's fees.  The Court will address the specifics of this fee award in the context of a fee application filed by Debtor's counsel.

### (15)    Miscellaneous Objections

Finally, the Debtor raised several general objections to the Bank's attorney's fees throughout her Objections, which the Court now addresses.  The first relates to the Fee Report. The Debtor argued that the arithmetic in the Fee Report was inaccurate because the Bank had not correctly summed the billable hours in its time sheets.  The Debtor did not claim to have reviewed each calculation and the ones she claimed were inaccurate, were only off by a few hundred dollars.  Given the extent to which the Court has already adjusted the Bank's recoverable attorney's fees, it does not find it necessary to conduct a detailed review of the arithmetic.  The Court has already approved what it finds to be a reasonable amount of fees for the work performed.

The Debtor has also argued that various parts of the Fee Report, such as the fees generated at the 341 meeting and 2004 exam, were actually used for the purpose of filing the Motion to Dismiss and should be disallowed under § 25 of the Mortgage.  The Court does not

find sufficient evidence in the record to support this claim.  The pleading the Bank filed to request the 2004 exam (Doc. No. 12) appears to relate to the feasibility of the Debtor's proposed chapter 13 plan.  Additionally, the Bank would have been entitled to conduct a 2004 exam and was entitled to attend and question the Debtor at the 341 meeting, even if it had not filed the Motion to Dismiss.  Accordingly, the Court shall overrule this portion of the Debtor's objection.

To the extent that the Debtor raises other objections to the Bank's fees not explicitly addressed in this opinion, the Court either finds those objections to be de minimis in light of the substantial reduction of the Bank's attorney fee claim or without merit and shall overrule them.

**(16)    Expenses**

The Bank seeks expenses in addition to the attorney's fees previously discussed.  The Bank included $8,258.20 in foreclosure related expenses in amended POC 11.  These expenses include newspaper publications required by state statute, appraisal fees, and fees incurred by the Bank's auctioneer, James R. St. Jean.  These fees, although on the higher end, are reasonable given all the circumstances of this case and given the Bank's duty to conduct the sale in such a manner to achieve the best price possible.  In Murphy v. Financial Development Corp., the New Hampshire Supreme Court described the duty a mortgagee owes to a mortgagor in conducting a foreclosure sale as "essentially that of a fiduciary."  126 N.H. 536 (1985).  A mortgagee "must exert every reasonable effort to obtain a fair and reasonable price under the circumstances."  Id. (internal quotation omitted).  Given this standard, the Court cannot say that the Bank's efforts were unreasonable.  Further, the Debtor has not provided any countervailing evidence to demonstrate that the Bank's foreclosure expenses were unreasonable or excessive.

The Bank also seeks reimbursement for costs its attorney incurred, both pre-petition and

post-petition. These costs amount to $200.17 for the pre-petition period and $1,889.52 for the

post-petition period. The Debtor has objected to these costs as insufficiently supported. After

reviewing the Fee Report and time sheets attached, the Court shall sustain the Debtor's objection

to the $1,193.70 for "Sharon R Fagan." There is no evidence in the record indicating who this

person is or what the expense relates to. The Court will allow the remainder of the expenses,

which appear to be sundry filings fees and copying charges.

Total expense amount allowed: $8,258.20 + $200.17 + $1,889.52 - $1,193.70 =

$9,154.19.

**(17) Summary Table**

The following table summarizes the preceding discussion:[13]

| Category | Time Requested | Fees Requested | Time Allowed | Fees Allowed |
|---|---|---|---|---|
| Pre-Petition Fees To be Included in POC 11 | | | | |
| (1) Taal Appeal of 1st Bankruptcy Dismissal | A: 1.2 P: 1.6 | $436.00 | All | $436.00 |
| (2) 1st Foreclosure Attempt | A: 16.4 P: 5.6 | $4,576.00 | A: 10 P: 3.65 | $2,810.25 |
| (3) Taal Appeal of 2nd Bankruptcy Dismissal | A: 4 | $1,000.00 | None | $0.00 |
| (4) 2nd Foreclosure Attempt | A: 8.8 P: 2.2 | $2,387.00 | A: 2.2 P: .55 | $596.75 |
| (5) Banking Commission Complaint | A: 8.1 | $2,025.00 | None | $0.00 |

---

[13] In the columns labeled "Time Requested" and "Time Allowed" the abbreviations "A:" indicates attorney time billed and allowed at $250.00 per hour and "P:" indicates paralegal time billed and allowed at $85.00 per hour.

23

| | | | | |
|---|---|---|---|---|
| (6) Taal 3rd Bankruptcy Filing | A: 3.9 | $975.00 | All | $975.00 |
| (7) State Court Matters | A: 9.6 P: 1.6 | $2,536.00 | None | $0.00 |
| (8) 3rd Foreclosure Attempt | A: 32.6 P: 13.7 | $9,314.50 | A: 16.25 P: 6.85 | $4,644.75 |
| (9) Injunction to Stop Foreclosure | A: 4.7 | $1,175.00 | All | $1,175.00 |
| *Sub-Total Pre-Petition Fees* | *114* | *$24,424.50* | *56.2* | *$10,637.75* |
| <u>Post-Petition Fees to be Included in Post-Petition Fee Notice and Cure Amount</u> | | | | |
| (10) Initial Work for Debtor's Bankruptcy | A: 39.2 P: 9.7 | $10,624.50 | A: 13 P: 3.2 | $3,522 |
| (11) 2004 Exam | A: 10.5 P: 6.2 | $3,152.00 | All | $3,152.00 |
| (12) 341 Meeting | A: 5 | $1,250.00 | All | $1,250.00 |
| (13) Proof of Claim and Objection to Confirmation | A: 22.8 P: 9.4 | $6,499.00 | All | $6,499.00 |
| (14) Motion to Dismiss | A: 111.3 P: 41.8 | $31,378.00 | None | $0.00 |
| *Sub-Total Post-Petition* | *255.9* | *$52,903.50* | *69.2* | *$14,423.00* |
| **Sub-Total All Fees:** | **369.9** | **$77,328.00** | **121** | **$25,060.75** |
| (15) Expenses | Requested: $10,347.89 | | Allowed: $9,154.19 | |
| <u>**GRAND TOTAL ALLOWED:**</u> **$34,214.94** | | | | |

## V.  CONCLUSION

For the reasons set forth above and by separate order, the Court shall sustain in part and overrule in part the Objections.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:                                        /s/ J. Michael Deasy
                                              J. Michael Deasy
                                              Bankruptcy Judge