2016 BNH 007

---

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 14-10163-JMD
                                                                Chapter 13
Guylaine L. Taal,
                    Debtor


*Nancy H. Michels*
*Parnell, Michels & McKay, PLLC*
*Londonderry, NH*
*Attorney for the Debtor*


*Gregory T. Uliasz*
*Feniger & Uliasz, LLP*
*Manchester, NH*
*Attorney for St. Mary's Bank*

## <u>MEMORANDUM OPINION</u>

## I.   INTRODUCTION

Before the Court are two motions of the Debtor: (1) "Motion of Debtor for Fees to be Paid

by St. Mary's Bank as a Sanction to Attorney for Guylaine L. Taal" (Doc. No. 165) (the "Fee

Shifting Motion")[1] and (2) "Application for Fees Pursuant to Court Order (Doc. No. 152) Entered

October 27, 2015" (Doc. No. 162) (the "Fee Application").   In the Fee Shifting Motion, the

Debtor requests that the Court order St. Mary's Bank (the "Bank") to pay the legal fees she

incurred objecting to the Bank's proof of claim, its notice of post-petition fees, expenses, and

charges (Doc. Nos. 56 and 58) (together the "Objections"), as well as defending a motion to compel

the production of financial information (Doc. No. 138) (the "Motion to Compel").   The Debtor

---

[1] Although the Debtor uses the term "sanction" in referring to this first motion, the Court will call it the "Fee Shifting Motion"—the Debtor rests this motion on three different legal bases, the most important of which is not a sanctions request.   See <u>infra</u>.

filed the Fee Application in response to orders requiring the Bank to pay attorney's fees she

incurred defending and prosecuting various contested matters involving the Bank.   The following

opinion sets out the Court's findings and conclusions with respect to both the Fee Shifting Motion

and Fee Application, as both involve common facts and legal issues.

## II.  FACTS

The Court will set out only the general procedural background of this case.   The Court has

written two other published decisions in this case that contain more nuanced facts.   See In re Taal,

520 B.R. 370 (Bankr. D.N.H. 2014) (Taal I) (denying Bank's motion to dismiss this bankruptcy

case and for in rem relief from the automatic stay); In re Taal, 540 B.R. 24 (Bankr. D.N.H. 2015)

(Taal II) (reducing Bank's attorney fee and expense claim based both on New Hampshire's fee

shifting statute, NH RSA § 361-C:2, and on the basis that certain fees requested were unreasonable

under the federal lodestar approach).   The specific facts relevant to this decision involve only

those contested matters for which the Debtor seeks legal fees.

The Bank holds a mortgage on the Debtor's primary residence.   The Debtor recently

confirmed a chapter 13 plan that pays the Bank's mortgage directly and cures the arrearage on the

mortgage through the plan.   The mortgage arrearage mostly consists of legal fees and costs that

the Bank accrued pre-petition attempting to foreclose on its mortgage.   Early in the case, the

Debtor was successful in fending off the Bank's attempt to get this case dismissed as a bad-faith

filing and to get in rem relief from the automatic stay.   See Taal I, 520 B.R. at 370.   After this

legal fight was resolved, the parties began to litigate over the Bank's proof of claim and the

post-petition legal fees and costs it was seeking to recover from the Debtor.

2

The Debtor first objected to the proof of claim and post-petition legal fees and costs in November 2014.   Broadly, her objections fell into two categories: (1) errors the Bank made in accounting for the Debtor's pre-petition and post-petition mortgage payments and (2) the sizeable amount of legal fees and costs the Bank claimed it was owed.   These objections were further complicated during the Spring of 2015 when the Bank erroneously issued several notices to the Debtor indicating that she was behind on her mortgage payments and demanding payment of legal fees incurred pre-petition.   The Bank also reported this inaccurate information to the major credit bureaus.   Over the course of 2015, the Court issued several written decisions resolving various facets of these disputes.

*Accounting Disputes*

The Court issued its first lengthy order, <u>see</u> Doc. No. 88 (the "First Accounting Order"), finding that the Bank had incorrectly calculated the amount of interest and principal due on the mortgage as of the petition date and directing the Bank to correctly account for those balances. After the Bank recomputed its accounting, it took another round of objections and responses before the parties were able to stipulate to the amount of pre-petition principal and interest due on the mortgage.   Unfortunately, this truce was short-lived; virtually at the same time the parties were entering into the stipulation, the Bank was sending out erroneous collection notices to the Debtor.   In response, the Debtor asked the Court to sanction the Bank for violations of the automatic stay, and the Bank moved to clarify the First Accounting Order, arguing that confusion regarding the Court's instructions was at least partly to blame for the erroneous collection notices.

The Court then issued its second major order, see Doc. No. 132 (the "Second Accounting and Sanctions Order"),[2] finding that the Bank had violated the automatic stay and improperly followed the First Accounting Order, with the result that the Bank's claim was still incorrect. To remedy this situation, the Court ordered the Bank to again fix its accounting and sanctioned the Bank for its violation of the automatic stay. The sanction included the following: (1) a flat $500 sanction to the Debtor for time she missed from work to attend the hearing, (2) a requirement that the Bank contact the credit bureaus to expunge the incorrectly reported delinquencies, and (3) a fee award to the Debtor, including her attorney's fees for filing the sanctions motion, objecting to the Bank's clarification motion, and expending time "tracking the remedies"[3] provided for in the Second Accounting and Sanctions Order.

The Bank again recomputed the mortgage payment history and the Debtor again found additional problems with the accounting. See Doc. Nos. 137, 139. The Court resolved the dispute without a hearing, making a slight adjustment to the Bank's calculations. See Doc. No. 147. In this order, the Court awarded the Debtor further attorney's fees for having to file another objection.

*Fee Disputes*

During the same time the Court was resolving these disputes, it was also addressing the second part of the Debtor's Objections. To that end, the Bank and Debtor submitted a stipulated record detailing the attorney's fees the Bank was seeking to recover from the Debtor. The Court resolved these issues in its memorandum opinion, Taal II, 540 B.R. at 24. Taal II had the effect of

---

[2] Due to the requirements of the Court's CM/ECF system, this order was docketed twice both at Doc. No. 132 and 133. Both docket entries refer to the same order.

[3] By which the Court meant time Debtor's counsel spent ensuring that the Bank had caused the Debtor's credit reports to be corrected, reviewing the Bank's further accounting, and the time spent drafting and filing the related fee applications necessary for the Court to fix the sanctions amount.

substantially reducing the Bank's attorney fee claim and awarding the Debtor attorney's fees pursuant to NH RSA § 361-C:2.   Finally, because the Court had not yet determined the amount of attorney's fees to which the Debtor was entitled—with respect to any of its orders—it directed the Debtor to file the Fee Application.   The Debtor complied and also filed the Fee Shifting Motion, seeking additional fees beyond those the Court had already awarded.

## III.  DISCUSSION

### A.  The Fee Shifting Motion

In the Fee Shifting Motion, the Debtor requests attorney's fees for the Objections and the Motion to Compel.   These are attorney's fees that the Court has not yet awarded.   The Debtor has three legal theories that support the Fee Shifting Motion: (1) that as the prevailing party she is entitled to legal fees pursuant to the terms of the note and mortgage with the Bank, (2) that the Court should sanction the Bank for failing to properly support its proof of claim and request for post-petition legal fees, and (3) that the Court should award the Debtor attorney's fees pursuant to 11 U.S.C. § 105(a).[4]   The Bank has specific legal arguments against each of the Debtor's theories of recovery.   The Court will address these arguments when discussing the specifics of the Debtor's three requests.   First, however, the Court will address the Bank's general objection to the Debtor recovering any attorney's fees via the Fee Shifting Motion.

#### i) Preclusion

The Bank argues that the Debtor is precluded from asking for attorney's fees for any of the attorney time covered in the Fee Shifting Motion because the Court already determined that the Debtor was not entitled to legal fees for those efforts.   The substance of the Bank's argument is as

---

[4]  All further references to "§," "section," "Code," or "Bankruptcy Code" are references to title 11 of the United States Code, unless otherwise indicated.

5

follows: the Debtor requested attorney's fees in the Objections; the Court issued orders on these pleadings, see First Accounting Order, Taal II, 540 B.R. at 28, and declined to award fees for any of the attorney time covered in the Fee Shifting Motion.   To support this request, the Bank cites the Court's decision Tayla Nixon Site Developers, Inc. v. Stowe (In re Stowe), Adv. No. 11-1139-LHK, 2012 WL 6094126 (Bankr. D.N.H. Dec. 7, 2012).   In Stowe, the Court briefly discussed the concepts of issue and claim preclusion.   See id at *2 (citing Banco Santander de Puerto Rico v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.), 324 F.3d 12, 16 (1st Cir. 2003) (discussing the elements of claim preclusion); Pisnoy v. Ahmed (In re Sonus Networks Inc., Shareholder Derivative Litigation), 499 F.3d 47, 58 (1st Cir. 2007) (discussing the elements of issue preclusion)).   The Bank does not specify whether it is referring to issue or claim preclusion. The distinction does not make a difference in this context, however; an essential element of both issue and claim preclusion is a final judgment on the merits.

Here, the Court has not rendered a final judgment on the merits regarding the attorney's fees the Debtor is seeking in the Fee Shifting Motion.   The Bank refers to several of the Court's orders, arguing that they resolved the Debtor's fee requests, but none of these orders did so.   The First Accounting Order was just the first order on the Debtor's claim objection.   In fact, in Taal II, the Court noted that it was resolving only specific disputes and leaving all other aspects of the Objections for future disposition.   See Taal II 540 B.R. at 28 n.3.   It should be evident from the procedural history of this case, that while the Court has made final decisions on discrete legal matters, it has not completely disposed of the Objections.   For example, the Court has determined that the Debtor is entitled to receive attorney's fees for certain matters, but has not yet determined the amount of those fees.   See discussion of the Fee Application, infra.   For these reasons, neither

claim or issue preclusion bar the Court from making a determination on the merits of the Debtor's

Fee Shifting Motion.

*ii) Fees pursuant to RSA § 361-C:2*

The Debtor seeks to recover fees from the Bank under the terms of the note and mortgage.

In Taal II, the Court discussed the fee shifting provisions of the note and mortgage at length.   The

relevant language of the mortgage provides as follows:

> **Attorneys' Fees.**
> Pursuant to New Hampshire Revised Statutes Annotated Section 361-C:2, in the
> event that Borrower shall prevail in (a) any action suit or proceeding, brought by
> Lender, or (b) any action brought by Borrower, reasonable attorneys' fees shall be
> awarded to Borrower. Further, if Borrower shall successfully assert a partial
> defense or set-off, recoupment or counterclaim to an action brought by Lender, a
> court may withhold from Lender the entire amount or such portion of its
> attorneys' fees as the court shall consider equitable.

Taal II, 540 B.R. at 36-37 (quoting from § 25 of the mortgage).   The Court went on to find that §

25 of the mortgage and New Hampshire RSA § 361-C:2 allowed the Debtor to recover her

attorney's fees for defending against the Bank's motion to dismiss.   Taal II, 540 B.R. at 38.

Here, the Bank raises several arguments as to why the Debtor should not be allowed to recover

attorney's fees under the note and mortgage for the items included in the Fee Shifting Motion.

The Bank argues that the Debtor should not be able to recover the fees because the fees are

not the type of fees the Bank itself could recover under the note and mortgage.   If the Debtor

could recover types of fees the Bank could not, the Bank argues an unintended result would occur:

fee enhancement rather than fee shifting.   The Court finds no support for the Bank's premise in

either RSA § 361-C:2 or the mortgage.   The prefatory language of RSA § 361-C:2 provides that

certain types of contracts in New Hampshire must provide for fee shifting of attorney's fees to a

7

debtor, if a creditor can recover attorney's fees under the relevant contract.[5]  The mortgage

provides that the Bank may recover a broad range of fees, "including, but not limited to, attorneys'

fees, property inspection and valuation fees."   Taal II, 540 B.R. at 29-30.   Because the mortgage

provides the Bank with the right to recover attorney's fees from the Debtor, RSA § 361-C:2

requires the right to be reciprocal.

The language of RSA § 361-C:2 does not require a court contemplating a fee award to

compare the contractual rights to attorney's fees as between a debtor and a creditor.[6]   There is

nothing in the mortgage or the statute that limits the Debtor's ability to recover attorney's fees to

those types of fees that the Bank could recover if the parties' positions were reversed.   The statute

and mortgage simply provide for the Debtor to recover attorney's fees if (1) the Debtor prevails (2)

in any "action, suit or proceeding" brought by the Bank.   The Bank also argues that the Debtor

cannot meet either of those requirements.

The Bank argues that the Objections and the Motion to Compel do not count as "actions,"

"suits," or "proceedings."   In Taal II, the Court found that these terms extended to include

contested matters in a bankruptcy case:

> The language of § 25 refers to "any action suit or proceeding" brought by the Bank.
> Section 9 of the Mortgage uses the term "proceeding" to refer to a "proceeding in
> bankruptcy." The Court sees no reason that these terms should not be afforded
> consistent meaning throughout the Mortgage, especially where both sections deal

---

[5]  "If a retail installment contract or evidence of indebtedness provides for attorney's fees to be awarded to the retail seller, lender or creditor in any action, suit or proceeding against the retail buyer, borrower or debtor involving the sale, loan or extension of credit, such contract or evidence of indebtedness shall also provide that:
I. Reasonable attorney's fees shall be awarded to the buyer, borrower or debtor if he prevails in
(a) Any action, suit or proceeding brought by the retail seller, lender or creditor; or
(b) An action brought by the buyer, borrower or debtor; and
II. If a buyer, borrower or debtor successfully asserts a partial defense or set-off, recoupment or counterclaim to an action brought by the retail seller, lender or creditor, the court may withhold from the retail seller, lender or creditor the entire amount or such portion of the attorney fees as the court considers equitable."
RSA § 361-C:2.
[6]  That comparison is made at the time of the drafting of the contract; it is irrelevant during the fee award process.

8

with attorney's fees. Second, the plain and ordinary meaning of the terms "action," "suit," or "proceeding" encompasses contested matters in a bankruptcy proceeding.

Taal II, 540 B.R. at 37.   The Debtor seeks fees in connection with three contested matters: the Objections and the Motion to Compel.   The Bank has offered no substantive reason why the Court should treat these three contested matters differently from the motion to dismiss discussed in Taal II, and the Court perceives no reason to reach a different result.   Accordingly, it finds that these contested matters are the type of proceeding for which the Debtor may recover legal fees under § 25 of the mortgage and RSA § 361-C:2.[7]

Finally, the Bank argues that the Debtor should not be awarded attorney's fees because she did not "prevail" within the meaning of the RSA § 361-C:2 because she was only partially successful on the merits of the Objections and Motion to Compel.   The Court did not address this issue in Taal II.

The text of RSA § 361-C:2 does not provide any specific directive as to what should be done when a debtor is successful on some claims and not others.   Cf. Cal. Civ. Code § 1717(b)(1) (setting out a specific standard for determining whether a party is "prevailing" in the California fee shifting statute).   In the bankruptcy context, parties often are not completely successful in contested matters such as objections to claims.   These types of pleadings routinely do not contain a singular cause of action with only two possible outcomes.   For example, in Taal II, the Court addressed the Debtor's objection to the Bank's legal fees as a series of discrete legal claims that could be sustained or overruled piecemeal.   See Taal II, 540 B.R. at 40 (summary table).   Here,

---

[7] The Court discounts the Bank's argument that rests on the Debtor's use of the term "issue" in the Fee Shifting Motion.   Rather than organizing the Fee Shifting Motion by type of pleading, the Debtor organized the Motion by legal "issue," presumably because the objection to claim and post-petition fee notice largely deal with the same issues. The Bank argues that the Debtor cannot seek fees on an "issue" because an "issue" is not an "action, suit, or proceeding."   Rather than becoming ensnared in this semantic morass, the Court simply looks to the underlying pleadings for which the Debtor is seeking fees—how the Debtor refers to the fees in the motion does not affect the substance of the request.

unless the Debtor was successful on each of a dozen smaller claims, she could not have been completely successful in terms of the pleading as a whole.

The Debtor was, however, substantially successful from an objective standpoint.   In terms of the objection to claim, the Court found several times that the Bank had improperly accounted for the Debtor's mortgage payments and required the Bank to rework its accounting.   This was a clear victory for the Debtor that required significant litigation to achieve.   Next, turning to the Debtor's objection to the Bank's attorney's fees and costs, the Court notes that the Debtor was again substantially successful in reducing the legal fee and cost component of the Bank's claim. The Court allowed only 43%[8] of the legal fees the Bank sought for pre-petition matters (the objection to claim) and 27%[9] of the legal fees for the post-petition matters.   Taal II, 540 B.R. at 40 (summary table, sub-totals for pre-petition and post-petition fees).

In the absence of a specific statutory process set out in RSA § 361-C:2, the Court turns to the New Hampshire Supreme Court cases on point.   In New Hampshire, a party may be awarded legal fees even if only partially successful on the merits.   See Van Der Stok v. Van Voorhees, 151 N.H. 679, 685 (2005).   In making an award of attorney's fees, "where a party prevails on some claims and not others, and the successful and unsuccessful claims are analytically severable, 'any fee award should be reduced to exclude time spent on unsuccessful claims.'"   Id. at 685 (quoting Appeal of Brown, 143 N.H. 112, 121 (1998)).   The Court can readily apply this principle here.

The Court finds that the Debtor met with essentially complete success on the portion of the Objections dealing with the accounting of principal and interest, so the Court will award the

---

[8]  10,637 / 24,424 * 100 = 43%.
[9]  14,423 / 52,903 * 100 = 27%.

Debtor all of her attorney's fees for prosecuting those claims.[10]   Likewise, the Debtor was

completely successful in defending against the Motion to Compel, so she will be awarded all those

fees.   The Court will award the Debtor attorney's fees for objecting to the Bank's legal fees and

costs in proportion to the success the Debtor achieved on the merits.   In making these fees award,

the Court again applies the lodestar approach it previously used when awarding fees under RSA §

361-C:2.   See Taal II, 540 B.R. at 30-31 ("Under this approach, the Court 'multipl[ies] the

number of hours productively spent by a reasonable hourly rate.'") (quoting Berliner v. Pappalardo

(In re Sullivan), 674 F.3d 65, 69 (1st Cir. 2012)).   The Bank has not objected to the hourly rate

charged by Debtor's counsel and has not criticized any of the time as being unreasonably spent.

The Court has independently reviewed the time sheets provided and finds the hourly rate charged

reasonable ($250 per hour for attorneys and $75 per hour for paralegals) and does not find that any

of the time was unproductively spent.

      The following table sets out the specifics of the fee awards for prosecuting the Objections

and defending against the Motion to Compel:

| Type of Fees | Amount Requested | Amount Allowed |
|---|---|---|
| *Misapplication of Payments* | $12,447.50 | $12,447.50 |
| *Objecting to Legal Fees and Costs* | $13,037.50 | $7,952.88[11] |
| *Defending Motion to Compel* | $1,872.50 | $1,872.50 |

---

[10] Time entries relating prosecuting the objection to the Bank's accounting are marked with "A" on the exhibit to the Fee Shifting Motion.   Similarly, those marked with "B" relate to time spent objecting to legal fees and costs and those marked with "C" relate to the Motion to Compel.

[11] 61% of the requested amount, which is roughly the extent to which the Debtor was successful in objecting to the legal fees and expenses of the Bank.   See Taal II, 540 B.R. at 40 (Sub-total of all fees of $77,328 + total requested expenses of $10,347.89 = $87,676.   The grand total of fees and costs allowed the Bank of $34,214.94 / $87,676 * 100 = 39%.   Accordingly, the Debtor was 61% successful.

| _Totals:_ | **$27,357.50** | **$23,011.67** |
| --- | --- | --- |

The Debtor has also requested that the Court award her legal fees pursuant to Bankruptcy Rules 3001[12] and 3002.1[13] as well as § 105(a).[14]   Rule 3001 requires certain types of information to be included in support of a proof of claim including "an itemized statement of the interest, fees, expenses, or charges" and a special form if the debt described in the proof of claim is secured by the debtor's principal residence; the creditor must also include an escrow account statement if it escrows for payment of taxes.   See Bankruptcy Rule 3001(c)(2)(A) and (C).   Rule 3002.1 applies in chapter 13 cases, such as the Debtor's, where the plan cures a mortgage arrearage and maintains payments on a principal residence, and requires the mortgagee to file a notice containing certain information when mortgage payments change post-petition or when the mortgagee incurs certain types of fees and costs.   See Bankruptcy Rule 3002.1(b) and (c).

The Debtor argues that the Bank violated both of these Rules when it filed its proof of claim, notice of payment change, and notice of post-petition fees and costs.   The language in both

---

[12] "If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:

(i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure."
Fed. R. Bankr. P. ("Bankruptcy Rule") 3001(c)(2).

[13] "If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:

(1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure."
Bankruptcy Rule 3002.1(i).

[14] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."
11 U.S.C. § 105(a).

Rules 3001(c)(2) and 3002.1(i) regarding sanctions is permissive, indicating that the court "may" award sanctions.   Here, the Court finds that even if the Bank did violate these Rules, sanctions are inappropriate in light of the already significant legal fees the Court has determined the Bank must pay the Debtor.

Similarly, the Court finds that the Bank is not required to pay any additional amounts to the Debtor pursuant to § 105(a).   Section 105(a) affords a bankruptcy court statutory contempt powers, including the ability to sanction a party.   Ameriquest Mortg. Co. v. Nosek (In re Nosek), 544 F.3d 34, 43-44 (1st Cir. 2008).   This equitable remedy should only be used where "demonstrably necessary" to protect a party's rights under the Bankruptcy Code.   Id. at 44. Here, the Court does not find it necessary to resort to § 105(a):   The Bank is already required to pay a considerable portion of the Debtor's attorney's fees under state law, the payment of which at least equals and likely would eclipse any sanction the Court might award under these circumstances.

### B.   The Fee Application

In the Fee Application, the Debtor is asking the Court to approve the specific amount of attorney's fees that the Court stated it would award to the Debtor in previous orders.   The Court needs to answer two questions with regard to the Fee Application: (1) are the fees included in it the type of fees the Court stated that it would award and (2) are the fees reasonable under the lodestar approach.   The Bank has asserted many objections to the Fee Application that cover both of these topics.   The Court will address each of the Bank's objections in turn.

*i) Formatting Objections*

To support the Fee Application, the Debtor submitted detailed time sheets, similar to those provided in the exhibit to the Fee Shifting Motion.   The Bank has a number of detailed objections that attack the format of these time sheets.   The Court will address the formatting objections first. The Fee Application covers two categories of fees: (1) fees the Court awarded the Debtor for prevailing in the motion to dismiss and (2) fees the Court awarded as a sanction for the Bank's violation of the automatic stay.   Debtor's counsel does not keep time on a per pleading basis, but on a case and client basis.   For this reason, Debtor's counsel had to go through her billing statements and mark those entries for which the Court awarded attorney's fees.   Debtor's counsel did this on Exhibits A and B to Doc. No. 162.   Counsel marked those time entries relating to the motion to dismiss with a hand-written "A" and identified the entries regarding the stay violation with a hand-written "B."   Further, for certain items, the billing software that Debtor's counsel used did not identify the person making each individual time-entry, so Debtor's counsel had to add this information in by hand as well.   Entries marked with "NHM" stand for work Debtor's counsel did herself and those marked with "JBD" indicate that counsel's paralegal did the work. Finally, certain entries in Exhibits A and B mix legal work for which the Court awarded attorney's fees with legal work for which the Court did not award attorney's fees.   For example, on page 1 of Exhibit A, the first entry on March 31, 2014 states:

> E-mail correspondence with client re MTD E-mail correspondence with client
> MOR E-mail correspondence with client re amount owed to St. Mary's Bank, POC,
> Plan and how amount due St. Mary's was estimated [sic]

Doc. 162, Ex. A, page 1, first entry dated 3/31/2014.   Debtor's counsel expended 1.10 hours in total on all the tasks listed, but of these tasks, only one of the three subjects of "E-mail

correspondence" related to the motion to dismiss.   So, Debtor's counsel estimated the amount of time she spent on this sub-task and wrote ".2 hrs $50" underneath the time amount.   Debtor's counsel addressed each entry containing sub-tasks for which the Court did and did not award attorney's fees in the same way.   In the Fee Application, Debtor's counsel candidly admits the time she attributed to the sub-tasks were estimates made to the best of her ability.

The Bank objects to all of these hand-written alterations for various reasons.   The Bank argues the alterations affect the integrity of the original contemporaneous billing record because there is no indication of who made the changes and because the changes are potentially inaccurate, as they were made long after the original billing statement.   The Bank especially objects to the "estimating" of time spent on sub-tasks; the Bank does not want to have to pay an "estimated" bill. For these reasons, the Bank argues that the Court should disallow all legal fees supported by entries with hand-written changes.   Debtor's counsel explained that the hand-written alterations were necessary because she moved between law firms during the course of this bankruptcy proceeding.   The relevant time entries were made using the billing software used by the old firm, which she no longer had access to when preparing Exhibits A and B, so she made any necessary changes by hand.   Counsel further explained that it was necessary to hand-write the initials of the time keeper next to each entry because at the old firm there was only one lawyer and one paralegal—making the initials unnecessary.

The Court is not troubled by the hand-written alterations to the Debtor's time sheets.   The explanations supplied by Debtor's counsel adequately explain the need to add timekeeper initials to each entry.   The Court does not think there is any significant concern about inaccuracy given

that only one attorney and paralegal worked at the firm and both billed at different hourly rates. On that basis alone it would be possible to tell who did what work without the added initials.

The Court also finds Debtor's counsel's method of estimating the time spent on sub-tasks to be reasonable.   Had Debtor's counsel submitted the billing statements without the estimates, the Court would have had to make its own estimation about how much time should be attributable to the sub-tasks within each time entry for which it was awarding fees.   Debtor's counsel is an experienced bankruptcy practitioner, and the Court credits her ability to estimate how long was spent on certain tasks, even allowing for the long passage of time between the recording of the task and the estimation.   Further, notwithstanding Debtor's counsel's efforts at estimating the time spent on sub-tasks, the Court has conducted a detailed, independent review of the time attributed to each sub-task.   None of the time entries allocated to the tasks relevant to the Fee Application appear unreasonable for the work described.   Accordingly, the Court finds no basis for disallowing Debtor's counsel's fees simply because of the hand-written changes.

The Bank has several other formatting arguments.   The Bank points out that some time entries appear to be undated and asks that those fees be disallowed.   Debtor's counsel responds that all entries without a date next to them occur on the same date as the last time entry with a date listed.   The Court accepts this explanation and did not have any trouble reading the billing statements with that understanding.

Finally, the Bank points out that Debtor's counsel appears to have redacted and re-written certain time entries.   Debtor's counsel acknowledges that this is the case stating that all redactions were to remove information the Debtor considered "sensitive" such as her email address.   The Debtor argues that the Bank also supplied attorney billing statements containing redactions

16

throughout, which the Court accepted.   Having reviewed the time sheets, the Court does not find the alterations to be material, even without knowing exactly what they said before.   First, the number of entries with alterations appear to be *de minimis*.   Second, it appears from the context of the altered entries, see, e.g., Ex. A, page 1, entry dated 4/10/2014, that the Court would be able to determine in general what type of activity the attorney or paralegal was performing and thus whether the amount of time spent on the task was excessive.   Finally, the Court agrees with the Debtor that the Bank submitted similarly redacted billing statements for the legal fees discussed in Taal II and was not penalized.   The parties have a troubled relationship, and the Court is cognizant of their apparently mutual desire to keep as much personal identifying information out of this dispute as possible.   The Court will not castigate the Debtor for submitting minimally redacted timesheets.

   *ii) Lodestar Objections*

   The next category of objections relate to fees the Bank argues are unreasonable under the lodestar approach.   The Court has already found the hourly rates charged by Debtor's counsel to be reasonable with respect to the fees requested in the Fee Shifting Motion.   See supra.   The hourly rates are no different in the Fee Application, so the Court again finds them similarly reasonable.

   Moving on to whether any time included in the Fee Application was "spent on unnecessary, duplicative, or overworked tasks," In re Sullivan, 674 F.3d at 69, the Bank targets a multitude of time entries in great detail in its objection.   Rather than attempting to address each of these granular objections, the Court will address a few of the Bank's broader concerns.   To address the Bank's individual concerns, the Court reviewed the timesheets in Fee Application

Exhibits A and B in detail, conducting its own, independent review of the time Debtor's counsel spent.   The Court will discuss the result of that review after addressing the Bank's broader concerns.

The Bank first argues that the Court should disallow all fees for the Motion for Sanctions[15] because the Bank contends its filing was unnecessary—the Debtor should simply have contacted the Bank and resolved the matter out of Court.   The Court is not going to address this argument on the merits because the Bank made the same argument in its objection to the Motion for Sanctions several months ago.   See Doc. No. 127, Bank's Objection, at 7 ("There was no need to incur attorney's fees by filing an unnecessary Motion for Sanctions (Doc. 124), when this issue could have been addressed short of Court-involvement.").   The Court ruled against the Bank and granted the motion; the Bank has not argued that anything has changed in the interim, so the Court has no reason to change its decision now.   The Court is deciding the amount of attorney's fees the Debtor is entitled to for the filing of the Motion for Sanctions, not whether the Debtor is entitled to attorney's fees in general.

Next, the Bank argues that the time spent prosecuting the Motion for Sanctions and objecting to the Motion for Clarification[16] overlapped the same subject matter and thus was largely duplicative and wasteful.   Specifically, the Bank asks the Court to disallow the 6.1 hours of attorney time Debtor's counsel spent working on the Motion for Clarification.   The Debtor responds that it was necessary to go back through the Bank's accounting of pre- and post-petition mortgage payments to understand and respond to the Motion for Clarification, a time consuming

---

[15]  The Debtor filed the Motion for Sanctions (Doc. No. 124) to remedy the Bank's erroneous past-due payment notices that the Court ultimately determined violated the automatic stay.

[16]  The Bank filed the Motion for Clarification (Doc. No. 126) in response to the Motion for Sanctions in an attempt to clear up confusion it had regarding the First Accounting Order (see supra).

process.    In reviewing Exhibit B, it appears to the Court that Debtor's counsel spent approximately 13 hours preparing the Motion for Sanctions.    See Ex. B to Doc. No. 162, at 13. The subject of the Motion for Sanctions was largely the past-due notices which automatically and inadvertently were issued to the Debtor.    See Second Accounting and Sanctions Order, at 2-3. By contrast, in the Motion for Clarification, the Bank attempted to explain its inadvertent sending of the past-due notices in terms of what it thought was proper compliance with the First Accounting Order.    In the process of giving this explanation, the Bank made it clear that it had not understood the content of the First Accounting Order, calling into question the much of its accounting of the Debtor's mortgage payments up to that time.    The Court itself was mystified about how the Bank arrived at this conclusion.    See id. at 3.    For all of these reasons, the Court finds it reasonable that Debtor's counsel spent at least 6.1 hours reviewing and preparing a response to the Motion for Clarification.    The Court does not agree with the Bank that the subject matter of the Motion for Clarification duplicated that of the Sanctions Motion; it was similar but not the same, which is not surprising—this case has given new meaning to the cliché, "the devil is in the details."

Next, the Bank argues that the Court should disallow the legal fees incurred in relation to the Motion for Sanctions because that motion did not benefit the estate.    The Bank argues that the Debtor incurred only $500 worth of actual damages (aside from attorney's fees) as a result of its stay violation.    The Bank claims it was unreasonable for Debtor's counsel to spend thousands of dollars of attorney time prosecuting a motion that on the merits was worth only $500.    The Bank's argument rests on a mistaken premise.    In a chapter 13 case, counsel to the debtor is not awarded compensation based on the relative benefit to the estate.    This is the standard applicable to

attorneys employed directly by the estate.   See § 330(a)(4)(A).[17]   Rather, debtor's counsel is

awarded compensation pursuant to § 330(a)(4)(B), which expands upon the requirements of §

330(a)(4)(A) and is explicitly recognized in the prefatory language of that section, "[e]xcept as

provided in subparagraph (B)."   Section 330(a)(4)(B) provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court
> may allow reasonable compensation to the debtor's attorney for representing the
> interests of the debtor in connection with the bankruptcy case based on a
> consideration of the benefit and necessity of such services to the debtor and the
> other factors set forth in this section.

§ 330(a)(4)(B).   Notably, debtor's counsel in a chapter 13 case is responsible for representing "the

interests of the debtor," not the estate, which is the role the chapter 13 trustee plays; the efforts of

debtor's counsel need not benefit the bankruptcy estate to be compensable.   See In re Powell, 314

B.R. 567, 570 (Bankr. N.D. Tex 2004); Collier on Bankruptcy ¶ 330.03 (Alan N. Resnick & Henry

J. Sommer eds., 16th ed) ("Section 330(a)(4)(B) contains an exception to the general rule that

professionals' services are compensable only to the extent that they benefit the estate.").

Here, the efforts of Debtor's counsel benefitted the Debtor.   The value of bringing the

Motion for Sanctions cannot be quantified alone in the $500 of non-attorney fee damages the Court

awarded the Debtor.   The erroneous past-due notices had adversely impacted the Debtor's credit

records with the major credit reporting agencies, which the Court ordered the Bank to correct as a

result of the Motion for Sanctions.   See Second Accounting and Sanctions Order at 9-10.   The

Motion for Sanctions also exposed another round of deficient accounting.   See id.   And, even

---

[17]  "(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for--
(i) unnecessary duplication of services; or
(ii) services that were not--
(I) **reasonably likely to benefit the debtor's estate**; or
(II) necessary to the administration of the case." (emphasis added).

after the Court granted the motion, the Bank still had not correctly accounted for the Debtor's mortgage payments, resulting in yet another Court order.   See October 23, 2015 Order (Doc. No. 147).   For these reasons the Court will not disallow the fees incurred in relation to the Motion for Sanctions because the work Debtor's counsel did clearly benefitted the Debtor.

The Bank also tries to attack the same target from a different angle, arguing that, under the Court's decision in In re Mosher, the attorney's fees are so out of proportion with the other damages the Debtor otherwise suffered that the Court ought to disallow or reduce Debtor's counsel's fees.   Mosher v. Evergreen Mgmt. Inc. (In re Mosher), 432 B.R. 472 (Bankr. D.N.H. 2010).   The Court finds Mosher distinguishable from this case.   In Mosher, a chapter 13 debtor received several collection notices, post-petition, from her condominium association, at least in part for pre-petition debt.   While the Court found there was a violation of the automatic stay, the Court did not make any findings that showed the notices adversely affected the Debtor's credit reports or that the incident had significantly delayed the confirmation of the debtor's chapter 13 plan.   Id. at 475-76.   Accordingly, the Court reduced the legal fee award to debtor's counsel by about 50%.   Id. at 477.   Here, the Bank's errors both affected the Debtor's credit report and caused the Bank again to recalculate its proof of claim and adjust the arrearage cure amount.   The latter items delayed the confirmation of the Debtor's chapter 13 plan—even absent the actual damages the Debtor incurred, Debtor's counsel would have been justified in taking action to correct these issues.   Accordingly, Mosher is no barrier to allowing the attorney's fees in this case.

Finally, the Bank has objected to certain time as being outside the scope of the attorney's fees the Court awarded to the Debtor, either for the Motion to Dismiss or the Motion for Sanctions.

21

<u>See</u> Doc. No. 164, ¶ 37.   After reviewing the time entries in question on Exhibit B to Doc. No.

162, the Court agrees with the Bank that the time entry on March 20, 2015 does not appear to be

within the scope of the fee award; the Court will reduce the fee award to the Debtor by $15,

accordingly.   The Court finds the balance of the time entries the Bank points to contain work that

does appear within the scope of the Court's prior fee awards, and the Court will overrule that

portion of the Bank's objection.

For the reasons stated, the Court shall allow the fees requested in the Fee Application as

follows:

| **Type of Fees** | **Orders Allowing**[18] | **Amount Requested** | **Amount Allowed** |
|---|---|---|---|
| *Motion to Dismiss* | 145, 152 | $13,370.00 | $13,370.00 |
| *Motion for Sanctions and Motion for Clarification* | 132, 147 | $13,227.50 | $13,212.50 |
| ***Totals:*** | N/A | **$26,597.50** | **$26,582.50** |

*iii) Equitable Objections*

The Bank has several final arguments that seek to either defer or offset any award of

attorney's fees against its proof of claim.   In its initial salvo, the Bank asks that any attorney fee

award be offset against its proof of claim in this case.   The Debtor argues that the doctrine of

setoff is inapplicable in this situation because any attorney fee award will be paid directly to

Debtor's counsel, not the Debtor personally, upsetting the requirement of "mutuality" for setoff

purposes.   Neither the Bank nor the Debtor cite any legal authority to support their positions

regarding setoff.

---

[18] The docket number of the order in which the Court stated that it would award the Debtor the attorney's fees in question.

Substantively, setoff is non-bankruptcy right, preserved with "certain exceptions" in § 553,[19] that "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 19 (1995) (quoting Studley v. Boylston Nat. Bank, 229 U.S. 523, 528 (1913)). The right of setoff embodied in § 553(a) concerns pre-petition claims. See id. at 20 (general rule is that pre-filing setoff rights preserved). Although post-petition setoff is not explicitly addressed in § 553, or anywhere else in the Bankruptcy Code, courts may allow the setoff of post-petition debts, provided the other prerequisites of setoff are met. See Mohawk Indus., Inc. v. United States (In re Mohawk Indus., Inc.), 82 B.R. 174, 178-79 (Bankr. D. Mass. 1987) ("Section 553 does not attempt to deal with the setoff of postfiling debts; it refers only to mutual debts which arose prior to the commencement of the case. Setoff of mutual postfiling debts, however, is generally allowed despite the lack of any express statutory authorization."); Collier on Bankruptcy ¶ 553.03[6] ("the general rule is that, subject to the restrictions imposed by section 362, a postpetition claim may be offset against a postpetition debt so long as the claim and debt constitute valid, mutual obligations.").

The Bank has not grounded its setoff right in any non-bankruptcy law and for that reason alone the Court could deny the request. The Court, however, will consider the Debtor's argument that the debts are not mutual. Here, the Bank is required to pay the Debtor's attorney's fees by state statute. The Court agrees with the Debtor that the Bank owes the attorney's fees to Debtor's

---

[19] "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . ."
11 U.S.C. § 553(a).

counsel, not to the Debtor because of the simple fact that the fees are ultimately owed to Debtor's counsel, who has not been paid as of yet.   Thus, the Bank seeks to set off its claim against the Debtor from money it ultimately owes Debtor's counsel.   The two debts are not mutual debts.   In re SemCrude L.P., 399 B.R. 388, 393 (Bankr. D. Del. 2009) ("The authorities are also clear that debts are considered 'mutual' only when 'they are due to and from the same persons in the same capacity.'") (quoting Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 149 (2d Cir. 2002)).

Next come the arguments in which the Bank seeks to delay the attorney's fee payments. First, the Bank argues that it would be unfair to require it to make full payment, immediately, because the Debtor is allowed to make payments to the Bank gradually over the life of the chapter 13 plan.   This argument misses the mark because the Bank owes attorney's fees to Debtor's counsel, not the Debtor.   Additionally, these attorney's fees were incurred largely during 2014, so the Bank has already had a significant period during which it has not had to pay anything.   The Court will also deny this request.

The Bank also argues that it should not be required to pay anything to Debtor's counsel beyond what the Debtor would be obligated to pay.   The Bank claims that Debtor's counsel has come to a deal to reduce the payments the Debtor owes her.   As evidence, the Bank points to the Debtor's chapter 13 plan, which only provides for the payment of $3,313 of attorney's fees, far less than the amounts requested in the Fee Shifting Motion and the Fee Application.   The Debtor responds that nothing precludes Debtor's counsel from accepting payment of fees outside the plan and that any agreement between the Debtor and her attorney is irrelevant.   The Court agrees. The Court has found the majority of the fees requested to be reasonable and allowable; the Bank is

obligated to pay the fees under RSA § 361-C:2.   Any agreement to reduce attorney's fees the Debtor would owe Debtor's counsel beyond those recovered from the Bank is irrelevant.

Finally, the Bank argues that the Court should reduce or defer the payment of attorney's fees because it is a member-owned credit union, not a large national bank.   The Bank does not suggest and the Court does not know of any legal basis for granting this request, so it must be denied.   As a final matter, the Court finds moot the Bank's arguments concerning the feasibility of the Debtor's chapter 13 plan.   The Court confirmed the plan on January 22, 2016.

## IV.   CONCLUSION

For all the foregoing reasons, the Court will enter a separate order directing the Bank to pay the following amounts to Debtor's counsel forthwith:

| Type of Fees | Amount Requested | Amount Allowed |
|---|---|---|
| *Misapplication of Payments* | $12,447.50 | $12,447.50 |
| *Objecting to Legal Fees and Costs* | $13,037.50 | $7,952.88 |
| *Defending Motion to Compel* | $1,872.50 | $1,872.50 |
| *Motion to Dismiss* | $13,370.00 | $13,370.00 |
| *Motion for Sanctions and Motion for Clarification* | $13,227.50 | $13,212.50 |
| ***Totals:*** | **$53,955.00** | **$48,855.38** |

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:   May 16, 2016                           /s/ J. Michael Deasy
                                              J. Michael Deasy
                                              Bankruptcy Judge

25